1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10   MICHAEL SCHLADETZKY,

11                                    Plaintiff,

12            v.

13   JOHN DOE, et al.,

14                                    Defendants.

CASE NO. C19-0493JLR

ORDER DENYING MOTION
FOR SUMMARY JUDGMENT

15                          **I.    INTRODUCTION**

16         Before the court is Claimants Douglas McKenzie and Jeffrey Bigsby's

17   (collectively, "Claimants") motion for summary judgment.  (MSJ (Dkt. # 28); *see also*

18   MSJ Mem. (Dkt. # 29).)  Neither Plaintiff Michael Schladetzky, nor any other party, filed

19   an opposition to the motion.  (*See generally* Dkt.)  The court has reviewed the motion, all

20   //

21   //

22   //

1    submissions filed in support of the motion, the relevant portions of the record, and the

2    applicable law.  Being fully advised, the court DENIES the motion.[1]

3                              **II.    BACKGROUND**

4            During 2017 and 2018, Mr. Schladetzky and Mr. McKenzie kept their respective

5    boats in berths next to each other at the Port of Everett Marina.  (McKenzie Decl. (Dkt.

6    # 30) at 2.)  Mr. Schladetzky's boat had a Dickinson diesel furnace for a heat source.

7    (*Id.*)

8            Mr. McKenzie is an HVAC technician who "regularly install[s], repair[s] and

9    maintain[s] HVAC systems."  (*Id.* at 1.)  He has worked with both marine and shore

10   HVAC installations since 1985.  (*Id.*)  His work includes commercial, industrial, and

11   domestic applications.  (*Id.* at 1-2.)  His work on marine HVAC systems ranges from

12   pleasure boats to fishing vessels to cruise ships.  (*Id.* at 2.)  Mr. McKenzie has also

13   worked on Dickinson diesel furnaces over the years and is familiar with their operation,

14   maintenance, and repairs.  (*Id.*)

15           During 2017 and 2018, Mr. McKenzie spent time on and around Mr.

16   Schladetzky's boat.  (*Id.*)  Mr. McKenzie noticed that the furnace on Mr. Schladetzky's

17   boat blew out thick black smoke and smelled of raw diesel fuel.  (*Id.* at 2-3.)  Based on

18   his experience, Mr. McKenzie recognized that Mr. Schladetzky's Dickinson diesel

19   furnace needed repairs and maintenance for safety and proper operation.  (*Id.* at 3.)  He

20

21   _____

       [1] Claimants do not seek oral argument on their motion (*see* MSJ at 1), and the court does
22   not consider oral argument to be helpful in its disposition of this motion, *see* Local Rules W.D.
     Wash. LCR 7(b)(4).

1    also recognized that Mr. Schladetzky's furnace created a safety and fire hazard due to the

2    pooling of fuel and the heat of the furnace.  (*Id.*)  Mr. McKenzie discussed the need for

3    maintenance and repairs with Ms. Schladetzky on several occasions.  (*Id.*)  Mr.

4    Schladetzky acknowledged the need for maintenance and repairs, but Mr. McKenzie did

5    not observe that Mr. Schladetzky accomplished any.  (*See id.*)

6        On October 8, 2018, Mr. Schladetzky's boat burned at its slip, resulting in a total

7    loss of the vessel and damage to the boathouse, including Mr. McKenzie's slip and other

8    adjoining slips.  (*Id.*)  Earlier in October 2018, Mr. McKenzie observed black smoke and

9    soot coming from Mr. Schladetzky's furnace along with "a raw fuel smell."  (*Id.*)

10       Mr. McKenzie opines, based on his "HVAC experience" and his observations of

11   Mr. Schladetzky's operation of his Dickinson diesel furnace, that Mr. Schladetzky "was

12   negligent in the maintenance and operation of his Dickinson diesel furnace causing the

13   fire."  (*Id.*)

14       On April 30, 2019, Mr. Schladetzky filed a complaint, in admiralty and maritime

15   jurisdiction, for exoneration from or limitation of liability under 46 U.S.C.

16   §§ 30501-30511, related to the October 8, 2018, fire.  (*See* Compl. (Dkt. # 1).)  On May

17   23, 2019, Claimants filed claims for damages against Mr. Schladetzky, alleging that he

18   negligently caused the fire on his boat, which in turn caused damage to their property at

19   the marina.  (*See* Bigsby Claim (Dkt. # 14); McKenzie Claim (Dkt. # 15).)  On June 11,

20   2020, Claimants filed a motion for summary judgment.  (*See* MSJ.)  Mr. McKenzie seeks

21   damages in the amount of $23,360.00.  (MSJ Mem. at 4.)  Mr. Bigsby seeks damages in

22   //

1   the amount of $12,537.75.  (*Id.*)  Mr. Schladetzky did not respond to Claimants' motion.

2   (*See generally* Dkt.)  The court now considers Claimants' motion.

### III.   ANALYSIS

**A.   Standards**

5       Although Claimants' motion for summary judgment is unopposed, a party's

6   failure to respond to a motion for summary judgment does not permit the court to grant

7   the motion automatically.  *See Heinemann v. Satterberg*, 731 F.3d 914, 916 (9th Cir.

8   2016) ("[A] motion for summary judgment may not be granted based on a failure to file

9   an opposition to the motion.").  Rather, the court may only "grant summary judgment if

10  the motion and supporting materials—including the facts considered undisputed—show

11  that the movant is entitled to it."  Fed. R. Civ. P. 56(e)(3); *see Heinemann*, 731 F.3d at

12  916.  Where facts asserted by the moving party in an unopposed motion are concerned,

13  the court may "consider the fact undisputed for purposes of the motion."  Fed. R. Civ. P.

14  56(e)(3); *see Heinemann*, 731 F.3d at 916.  The existence of a scintilla of evidence in

15  support of the non-moving party's position is insufficient to allow the non-movant to

16  survive summary judgment.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986).

17  Rather, "there must be evidence on which the jury could reasonably find for the

18  [non-moving party]."  *Id.*

19      With respect to the admissibility of expert testimony, Federal Rule of Evidence

20  702 provides as follows:

21          A witness who is qualified as an expert by knowledge, skill, experience,
            training, or education may testify in the form of an opinion or otherwise if:
22          (a) the expert's scientific, technical, or other specialized knowledge will help

the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

For expert testimony to be admissible under Rule 702, it must satisfy three basic requirements:  (1) the expert witness must be qualified; (2) the testimony must be reliable, and; (3) the testimony must be relevant.  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589-91 (1993).  The proponent of an expert's testimony bears the burden of establishing by a preponderance of the evidence that the requirements for admissibility have been satisfied.  *Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).

A court considering the admissibility of expert testimony under Rule 702 acts as a gatekeeper and must ensure that the testimony is both reliable and relevant.  *Daubert*, 509 U.S. at 589.  *Daubert* requires that the court make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid," and "whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* at 592-93.  In assessing the reasoning or methodology used, the court may consider "such criteria as testability, publication in peer reviewed literature, and general acceptance."  *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) (citing *Daubert*, 509 U.S. at 592–94).  The court's inquiry is a flexible one, however, and these specific criteria do not necessarily apply "to all experts or in every case."  *Id.* at 564 (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).  Whether to admit expert testimony is within the court's discretion.  *Kumho*, 526 U.S. at 152.

**B.      Claimants' Motion for Summary Judgment**

The evidence that Claimants present in support of their motion consists of the declaration of Mr. McKenzie.  (*See* McKenzie Decl.)  Mr. McKenzie's testimony concerning the events leading up to the October 8, 2018, fire at the Port of Everett Marina is undisputed, and the court accepts it as true for purposes of this motion.  However, in addition to serving as a fact witness, Mr. McKenzie also offers expert testimony in support of Claimants' motion.  (*See generally id.*)  Based on his testimony, the court concludes that Mr. McKenzie is a qualified expert in the area of HVAC systems and that his testimony concerning Mr. Schladetzky's Dickinson diesel furnace is both reliable and relevant under the standards set forth in Rule 702 and *Daubert*.  *See* Fed. R. Evid. 702; *Daubert*, 509 U.S. at 589-91.  Thus, the court concludes that Mr. McKenzie's opinion testimony concerning Mr. Schladetzky's furnace is admissible and undisputed.

However, the court cannot conclude that Mr. McKenzie's opinion testimony concerning the cause of the fire is admissible under Rule 702 or *Daubert*.  Based on his expertise, Mr. McKenzie has offered qualified and undisputed expert testimony that Mr. Schladetzky was negligent in the operation of his boat's furnace.  (*See* McKenzie Decl. at 3 ("From my HVAC experience and my observations of [Mr. Schladetzky's] operation of the Dickinson diesel furnace . . . , it is my opinion that [Mr. Schladetzky] was negligent in the maintenance and operation of his Dickinson diesel furnace . . . .").)  However, when Mr. McKenzie attempts to take this testimony one step further and opine that Mr. Schladetzky's operation of the furnace was the cause of the fire (*see id.*), he renders an opinion outside the scope of his expertise.  The court has no doubt that the Dickinson

diesel furnace, as operated and maintained by Mr. Schladetzky, was a fire hazard.

However, this fact alone does not prove that the furnace was the hazard that caused this

particular fire.  Because Mr. McKenzie is not qualified to offer such an opinion, the court

concludes that Claimants fail to establish proximate causation, which is a required

element of their negligence claim.  *See White v. Sabatino*, 526 F. Supp. 2d 1143, 1156-57

(D. Haw. 2007) (quoting *Prince v. Thomas*, 25 F.Supp.2d 1045, 1047 (N.D. Cal. 1997)

("[T]he elements for a maritime negligence cause of action are defined similarly to the

common law: a duty, a breach of the duty, proximate cause, and damages.")).

Accordingly, the court denies Claimants' motion for summary judgment.[2]

## IV.   CONCLUSION

Based on the foregoing analysis, the court DENIES Claimants' motion for

summary judgment (Dkt. # 28), but without prejudice to bring another summary

judgment motion on a more complete factual record, if appropriate.

Dated this 5th day of October, 2020.

JAMES L. ROBART
United States District Judge

---

[2] The court notes that trial in this case is almost a year away.  (*See* Sched. Order (Dkt. # 27) at 1 (setting a bench trial for September 27, 2021).)  Further, the discovery cut off and the dispositive motions deadline are not until June 1, 2021, and June 29, 2021, respectively.  (*See id.*)  Thus, there is time to develop a more complete factual record and file another motion for summary judgment prior to trial, if appropriate.